IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| YOLANDA G. BYRD,<br><br>        Plaintiff,<br>   v.<br><br>PATRICK R. DONAHOE,<br><br>        Defendant.<br>_____/ | No. C 11-4230 RS<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

In late 2009 and early 2010, plaintiff Yolanda G. Byrd was disciplined and then fired by the United States Postal Service ("USPS"). Byrd contends the discipline and firing arose out of discrimination and retaliation, in violation of Title VII and the National Labor Relations Act ("NLRA"). Because the evidence shows that Byrd was disciplined and terminated for legitimate, non-discriminatory, non-retaliatory reasons, and she has shown no triable issue of fact to the contrary, summary judgment must be granted on her claims under Title VII. As jurisdiction to review claims arising out of any actions that USPS may have taken in response to Byrd's alleged complaints about "working conditions" or in response to any union-related activities in which she may have engaged lies exclusively with the National Labor Relations Board, Byrd's NLRA-based claims must be dismissed. Accordingly, judgment will enter for defendant.

## II. BACKGROUND

Between 2007 and 2009, Byrd was employed as a "General Expediter" at the USPS's Oakland Processing & Distribution Center ("OP&DC"), a 1.2 million square-foot facility where more than 3,000 employees process in excess of 2 million pieces of mail every day. The job of a General Expediter is to arrange for the proper transfer of mail to branch offices in Alameda, Solano, Contra Costa, and Napa Counties, where mail is then delivered to its final destination. General Expediters are assigned either to work "inside" the OP&DC facility, where they prepare and package mail to be loaded onto delivery trucks, or to work outside on the "docks" where they are responsible for making sure that the mail is on the proper truck and that USPS vehicles are dispatched in a timely manner.

Byrd was assigned to Tour-1 at OP&DC, an overnight shift that ran from approximately 10:30 p.m. until 7:00 a.m. She was not assigned to a specific dock but instead worked as a "floater" or "relief" General Expediter, meaning that she was assigned to different docks depending on the facility's needs, and she reported to different supervisors depending on the dock to which she was assigned. The supervisor who gave Byrd her work assignments was Robert Felix.

This lawsuit arises out of a series of disciplinary and other actions taken by USPS in late 2009 and early 2010 with respect to Byrd's employment. First, Byrd was disciplined because she failed to dispatch a loaded USPS truck to Walnut Creek on time on October 21, 2009. Byrd admits she dispatched the Walnut Creek truck late. Second, in December 2009, Byrd was restricted from using a USPS vehicle to perform her job duties. This restriction, however, applied to all General Expediters assigned to work on the docks. Byrd contends that a male General Expediter, Ricky Wylie, was permitted use of the vehicles, but she admits he was a "dock control clerk" who had different job duties than did she.

Third, Byrd was disciplined because she dispatched a loaded vehicle under circumstances that caused an unsecured mail container to fall to the ground, damaging parcels of mail. Byrd admits that she called the truck out and does not dispute that mail was damaged in the resulting accident. Fourth, Byrd was disciplined because she dispatched a Phoenix-bound USPS truck late on

both March 21, 2010, and March 28, 2010. Byrd admits that the trucks were not dispatched on time on either date.

Fifth, Byrd was disciplined because she was found by USPS management to have harassed another USPS employee. Although Byrd denies she engaged in any wrongful conduct, she admits having twice confronted the employee in question. Sixth, on May 18, 2010, Byrd complained to Felix that she was having chest pains after being served with a notice of suspension. Byrd objects that she was required to notify her supervisor prior to leaving her shift and seeking hospital treatment for chest pains, was not provided with transportation back to OP&DC after her discharge from the hospital, and was forced to take sick leave during her absence from work.

Seventh, and finally, Byrd was terminated on the putative grounds that she failed to load and dispatch four first-class mail flats that were sitting on the loading dock to which she had been assigned. Byrd admits the flats could have been, but were not, dispatched on a particular truck, because she told the driver not to take them.

On the basis of these facts, Byrd has asserted claims under the NLRA and claims of retaliation and discrimination under Title VII. Byrd's retaliation theory relates to the fact that over the years she has filed, and has assisted others in filing, numerous EEO complaints. Specifically, in 1996 and 1997, Byrd filed five formal complaints alleging discrimination and retaliation by USPS colleagues and supervisors. In those complaints, Byrd alleged that as many as eleven different USPS employees and supervisors discriminated and retaliated against her due to, among other things, her work for the American Postal Workers Union. All five of these prior complaints, however, were resolved in July of 2003, more than six years before any of the events at issue in this lawsuit occurred.

Between 2006 and 2008, and prior to the events giving rise to this case, Byrd filed three additional claims of discrimination and retaliation. Each of these three prior complaints was fully and finally resolved by October 15, 2008, roughly a year before the events giving rise to this action.

In 2009 and 2010, as Byrd was disciplined by multiple supervisors in a series of separate incidents, she began filing informal complaints with USPS. Specifically, she filed informal complaints of discrimination and/or retaliation on February 5, April 12, June 14, July 9, and

September 13, 2010. All of these informal complaints were consolidated into one formal administrative proceeding. Based on Byrd's multiple filings, a discrete set of "issues" was accepted for administrative review, all of which are encompassed by the facts set forth above. Upon completion of USPS's investigation, an administrative law judge ruled that several of Byrd's "issues" did not involve an "adverse employment action," and with respect to the remaining claims, found that Byrd had "not brought forth any evidence of pretext" to show that her treatment constituted either discrimination or retaliation. Because "no material fact [was] in genuine dispute when the evidence [was] viewed in the light most favorable to the complainant," the ALJ issued an order without a hearing and entered judgment against Byrd and in favor of USPS. This lawsuit followed.

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which it bears the burden of proof at trial. *Id.* at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth

material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (*citing Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

The principles of summary judgment apply equally in discrimination cases. *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983). Mere assertions that a defendant had a discriminatory motive or intent in taking an adverse action are inadequate to defeat summary judgment unless supported by substantial factual evidence. *Id.* "A party cannot defeat a motion for summary judgment by offering 'purely conclusory allegations of alleged discrimination, absent concrete particulars . . . , for to do so would necessitate a trial in all Title VII cases.'" *Nova v. Dalton*, C 96-3428 FMS, 1998 WL 355537, at *3 (N.D. Cal. June 30, 1998) (citing *Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992)).

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. It also prohibits an employer from retaliating against an individual because he or she has made a charge of

discrimination or opposed a discriminatory practice. 42 U.S.C. § 2000e-3. Title VII claims involving alleged discrimination and retaliation are both governed by a burden-shifting framework.

Initially, the burden rests with the plaintiff to establish a prima facie case of discrimination or retaliation. *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie case of discrimination, the plaintiff must show that: (1) she belongs to some protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated employees outside her classification more favorably. *Chuang v. Univ. of Cal., Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000). To establish a prima facie case of retaliation, a plaintiff must show "(1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006).

If the plaintiff can establish a prima facie case, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason' for the adverse action." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). Once the defendant has articulated a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff, who must demonstrate that the employer's reason for the adverse employment decision is a pretext for a discriminatory or retaliatory motive. *Burdine*, 450 U.S. at 253; *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (quoting *Lowe v. Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985)). In this final analysis, the plaintiff "must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses." *Schuler*, 793 F.2d at 1011. Rather, he or she must offer "specific and significantly probative evidence" that the proffered reasons are pretextual. *Id.* A plaintiff can show pretext "either (1) directly by persuading the court that a discriminatory reason more likely motivated the employer or (2) indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256.

## IV. DISCUSSION

### A. Sex discrimination

Byrd's claim of sex discrimination is based on the allegation that she was denied the use of a

1 postal vehicle in carrying out her job duties while another male employee was permitted to use one.
2 The claim fails for at least three reasons. First, under the circumstances, there is no basis to
3 conclude that denying Byrd the use of a postal vehicle would rise to the level of an "adverse
4 employment action." *See Chuang*, 225 F.3d at 1123; see also *Burlington Indus., Inc. v. Ellerth*, 524
5 U.S. 742 (1998); *Nichols v. So. Ill. Univ. Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007)
6 (employer's conduct must result in something more than "mere inconvenience or an alteration of job
7 responsibilities" (quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)). Byrd
8 admits that use of the vehicle was at most a convenience, not a necessity, and losing that
9 convenience is not a "significant change in employment status" cognizable under Title VII. *See*
10 *Ellerth*, 524 U.S. at 761).

11 Second, Byrd cannot demonstrate that she was treated differently than any other "similarly
12 situated individuals." While Byrd compares herself to Rickie Wylie and Richard Adkins, other
13 General Expediters, it is undisputed that Byrd was assigned to work outside on the docks at
14 OP&DC, whereas Wylie and Adkins had duties as "dock control clerks." USPS has shown, and
15 Byrd has not rebutted, that dock control clerks are required to travel greater distances on the job,
16 including between different docks and throughout the facility, such that they have a greater need to
17 use a vehicle than do General Expediters assigned to specific docks. Thus, because the "dock
18 control clerks" to whom she compares herself is not "similarly situated," Byrd has not made out
19 even a prima facie case.

20 Third, even if Byrd had met her initial burden, USPS has come forward with a "legitimate,
21 nondiscriminatory reason" for its decision to prohibit her from using a postal vehicle to carry out her
22 job duties. *Burdine*, 450 U.S. at 253 (quoting *McDonnell Douglas*, 411 U.S. at 802). Specifically,
23 Senior Manager of Distribution Operations Toya Jackson restricted General Expediters' use of
24 USPS vehicles based on management's view that, with the exception of "dock control clerks,"
25 General Expediters did not need to use a USPS vehicle to do their jobs. The record is devoid of any
26 evidence suggesting this basis for the restriction was a pretext for discrimination.

27
28

B. Retaliation

Byrd's' multiple claims of retaliation fail because Byrd has not presented "specific and significantly probative evidence" that the legitimate, non-discriminatory, and non-retaliatory reasons provided by USPS for its discipline and termination of Byrd were pretextual. *Schuler*, 793 F.2d at 1011. As to each of the disciplinary measures challenged by Byrd, USPS has articulated a legitimate and lawful reason for its conduct. *See Aragon v. Repub. Silver State Disposal, Inc*., 292 F.3d 654, 660-61 (9th Cir. 2002) ("poor job performance" is a "legitimate, nondiscriminatory reason for terminating . . . employment"); *Stegall v. Citadel Broad. Co*., 350 F.3d 1061, 1075(9th Cir. 2003) ("a poor attitude toward her job and her co-workers" are "legitimate nondiscriminatory reasons for terminating . . . employment").

Indeed, with respect to nearly all of these issues, Byrd concedes there was a non-discriminatory, non-retaliatory basis for USPS's actions. Under the Title VII burden-shifting framework, it is incumbent on Byrd, therefore, to provide "specific and substantial evidence that [USPS's] reasons are really a pretext." *Aragon*, 292 F.3d at 661. Byrd has not done this. Byrd's testimony in this matter provides no more than her own speculative conclusion and argument that her supervisors were acting with discriminatory or retaliatory animus.

This is inadequate: Byrd cannot rely on her own conclusory testimony to avoid summary judgment. *Forsberg v. Pac. Nw. Bell Tel*. Co., 840 F.2d 1409, 1419 (9th Cir. 1988). Similarly, the fact that Byrd filed prior complaints of discrimination cannot defeat summary judgment, either, especially where, as here, these complaints were resolved well over a year before any of the disciplinary measures giving rise to this action. *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1065 (9th Cir. 2002) ("A nearly 18-month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation."); see also *Paluck v. Gooding Rubber Co*., 221 F.3d 1003, 1010 (7th Cir. 2000) (year-long gap between an employee's prior complaint and her subsequent termination was "too long . . . to raise an inference of discrimination"). Because the record is devoid of evidence from which a reasonable trier of fact could conclude that USPS's proffered reasons for its conduct were merely a pretext for unlawful discrimination or retaliation, summary judgment must be granted on Byrd's Title VII claims.

8

C. <u>Retaliation arising from union activities</u>

To the extent that USPS allegedly "retaliated against Byrd for discussing working condition with co-workers" or for any union-related activities in which she may have engaged, this Court lacks jurisdiction over any claims that Byrd intends to pursue based on these activities. As the Ninth Circuit has explained:

> Activities to redress complaints about working conditions are "concerted activities" protected by the National Labor Relations Act (NLRA), 29 U.S.C. § 157. Violations of an employee's right to engage in concerted activities are within the exclusive jurisdiction of the NLRB.

*Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1350 (9th Cir. 1984). A federal district court therefore has "no subject matter jurisdiction over [a] retaliation claim" based on USPS's alleged response to Byrd's supposed complaints about "working conditions, *id.*, or with respect to her alleged "union-related activities," *Ethridge*, 861 F.2d at 1401-02. Accordingly, to the extent Byrd's claims sound under the NLRA, they must be dismissed.

## V. CONCLUSION

The motion for summary judgment is granted. A separate judgment will issue.

IT IS SO ORDERED.

Dated: 5/10/13

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

**THIS IS TO CERTIFY THAT A HARD COPY OF THIS ORDER WAS MAILED TO:**

**Yolanda G. Byrd**
5917 Wyman Street
San Pablo, CA 94806

DATED: 5/10/13

/s/ Chambers Staff
Chambers of Judge Richard Seeborg